FILED
2014 Sep-23 PM 02:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **STANFORD DWAYNE ISBELL,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **5:13-CV-0131-KOB** |
| **CAROLYN W. COLVIN,** | ) | |
| **ACTING COMMISSIONER OF** | ) | |
| **SOCIAL SECURITY** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

## I. INTRODUCTION

The claimant, Stanford Isbell, filed applications for a period of disability and Disability Insurance benefits on October 2, 2006, alleging disability commencing on June 8, 2006 because of back pain, depression, hypertension, diabetes mellitus, cervical and lumbar arthritis, degenerative disc disease, sleep apnea, hand injury, severe impairment of history of carpal tunnel release surgery, and fractured right foot. The Commissioner denied the claims. The claimant filed a timely request for a hearing before an Administrative Law Judge, and the ALJ held a video hearing on May 11, 2009.

In a decision dated July 14, 2009 , the ALJ found that the claimant was not disabled within the meaning of the Social Security Act and, thus, was ineligible for Disability Insurance Benefits. (R. 135). The claimant appealed the decision on July 29, 2009. The Appeals Council remanded the case on March 19, 2010, instructing the ALJ inter alia to obtain evidence from a medical expert to clarify the nature and severity of claimant's impairments and to give further

consideration to the claimant's maximum residual functional capacity.

The same ALJ held a second hearing on March 23, 2011. After the hearing, the claimant amended his onset date to February 17, 2009. On May 23, 2011, the ALJ issued a decision denying the claimant's application. (R. 24). On appeal, the Appeals Council denied the claimant's request for review. The claimant has exhausted his administrative remedies, and this court has jurisdiction under 42 U.S.C. §§ 405(g) and 1631(c)(3). For the reasons stated below, the decision of the Commissioner will be reversed and remanded.

## II. ISSUE PRESENTED

Whether the ALJ failed to comply with the special instructions contained in the Appeals Council's order by not obtaining another Psychiatric Review Technique from a mental health expert after the remand.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel,* 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determination *de novo.* The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402

U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not look only to those parts of the record that support the decision of the ALJ, but also must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

**IV. LEGAL STANDARD**

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To make this determination, the Commissioner employs a five-step sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920.

On remand by the Appeals Council, the administrative law judge must take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent

with the Appeals Council's remand order. 20 C.F.R. § 404.977(a) and (b).

## V. FACTS

The claimant has a high school education and was forty-seven years old at the time of the administrative hearing. His past work experience includes employment as a welder/ fitter. (R. 35). The claimant alleged that he was unable to work because of back pain, depression, hypertension, diabetes mellitus, cervical and lumbar arthritis, degenerative disc disease, sleep apnea, hand injury and severe impairments of history of carpal tunnel release surgery. (R. 142).

In making her most recent determination, the ALJ reviewed and considered the extensive medical evidence dating back to 2004 regarding the claimant's physical impairments. However, this court will not address the claimant's physical limitations because the issue before the court involves only the ALJ's failure to follow the Appeal Council's order regarding the claimant's mental impairments and limitations.

*Mental Limitations*

Medical records reflect Dr. Greg J. Sullivan, a treating physician at Parkway Medical Center, treated the claimant from August 1998 to February 2006 for anxiety and depression. Dr. Sullivan began prescribing the claimant Xanax for stress and nerves in August, 1998. (R. 356). Dr. Sullivan is the only physician of record who has treated and prescribed medication for the claimant's depression and anxiety disorders.

In October 2004, Dr. Sullivan indicated that the claimant suffered from depression that was confirmed by the claimant's mother, and he prescribed the claimant Prozac. (R.336).

In February 2006, the claimant presented to Dr. Sullivan complaining specifically of headaches, sleeping poorly, and having trouble reading blue prints. Upon examination, Dr.

Sullivan continued the claimant's prescription for Xanax, noting that the claimant's depression was related to his work schedule and divorce. (R.330).

On January 9, 2007, at the request of the Disability Determination Service for a Psychiatric Review Technique, Dr. Frank J. Nuckols examined the claimant. Dr. Nuckols found that the claimant had the nonsevere impairment of anxiety related disorders. He assessed that the claimant had mild limitations in activities of daily living, social functioning, and concentration persistence or pace and no episodes of decompensation. Dr. Nuckols also noted that the claimant took Xanax for anxiety related to his work schedule and divorce. He opined that the claimant's allegations of pain are partially credible, but that the claimant does his own chores, cooks, shops, watches TV and remembers what he watched, reads the newspaper and remembers what he read, drives a car, plays with his grandson and visits with friends.

On March 11, 2011, the claimant's representatives sent him for a consultative examination with Dr. Jeremy Allen. During this examination, the claimant complained of being unable to focus, being unable to read blue prints and being unable to remember what he was doing. After his examination, Dr. Allen attached a Physical Capacities Evaluation and Clinical Assessment to his notes. However, he did not attach any mental evaluation notes or Psychiatric Review Technique Form. (R.567).

*First ALJ Hearing (May 11, 2009)*

On May 11, 2009, the ALJ held a video hearing with the claimant. At this hearing, the claimant testified about his physical impairments; however, this court will only discuss testimony regarding the claimant's mental limitations.

At the hearing, the claimant testified about his depression only regarding medications that

he takes for his nerves and depression. When asked about pain, the claimant responded that, on an average day, his pain was an eight or nine on a scale of one to ten. (R. 50-51)

The ALJ then examined the Vocational Expert, David Head, who testified concerning the type and availability of jobs that the claimant was able to perform. (R. 55-57). The ALJ posed three hypothetical situations to the VE based on his possible findings of the claimant's RFC. First, the ALJ asked the VE to assume that the claimant was an individual of the same age, education and past relevant work experience. The individual has historically had back and neck pain, high blood pressure, diabetes, minimal carpal tunnel syndrome and right leg pain. The individual's pain and depression fall within the moderate category. The individual can sit, stand and walk sufficiently enough to sit six hours in a day and walk at least two hours in a day with a five, ten pound repetitive motion. The ALJ then asked the VE to identify any jobs that he believed the claimant could perform. The VE replied that this hypothetical would put the claimant in the definition of sedentary jobs. He replied that the claimant could perform noncomplex clerical jobs, such as information, telephone answering or posting clerk. There would also be jobs available in telephone order sales as well as in monitoring a surveillance system. (R.56).

The ALJ then asked the VE to consider a second hypothetical, regarding a person with the same limitations but also to assume that the previous individual could handle either an eight hour sit/ stand option or six hours of standing and walking combined, lifting five to ten pounds on a regular basis and occasionally lifting beyond 20 to 25 pounds with pain and depression still being in a moderate category. In response, the VE testified that these limitations would still qualify the individual for the jobs he first listed at the sedentary level and would add light jobs. Examples of the light jobs that the individual could now perform would include cashier

technician, retail sales and security guard. (R. 57).

Finally, the ALJ asked the VE to consider a third hypothetical, regarding a person with the same functional limitations of the previous individual but also to assume that the previous individual's pain or depression reached a marked level, even if it was only one or two times a week. In response, the VE testified that such a person would not be able to perform any of the jobs previously mentioned, nor any other jobs in the national economy. (R. 57).

*First ALJ Decision (Re: Mental Limitations)*

On July 14, 2009, the ALJ issued a decision finding that the claimant was not disabled under the Social Security Act. (R.137). First, the ALJ found that the claimant had not engaged in substantial gainful activity since the alleged onset of his disability. Next, she found that the claimant's history of carpal tunnel release surgery and hand injury, hypertension, diabetes mellitus, cervical and lumbar arthritis and degenerative disc disease, depression and sleep apnea qualified as severe impairments; she concluded, however, that these impairments did not singly or in combination manifest the specific signs and diagnostic findings required by the Listing of Impairments. (R.137).

The ALJ found that the claimant's mental impairment of depression was severe and that it caused a moderate limitation in the claimant's activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration persistence or pace; and no episodes of decompensation. (R.138).

The ALJ found that because the claimant's medically determinable mental impairment did not cause at least two "marked" limitations or one "marked" limitations and "repeated" episodes of decompensation, the "paragraph B" criteria were not satisfied and the claimant did

not satisfy the requirements to meet one of the listing impairments.

Next, the ALJ concluded that the claimant had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with a sit/ stand option and no more than mild to moderate pain and depression. (R.138). In making this determination, the ALJ gave significant weight to the psychiatric review technique performed by the State agency psychological consultant, Dr. Frank J. Nuckols on January 9, 2007. In this review Dr. Nuckols opined that the claimant did not have a severe mental impairment. (R. 364). The ALJ also gave some weight to the claimant's reports of his daily activities, noting that they indicate the claimant's capability of functioning independently and being able to perform simple light work.

To further support her conclusion, the ALJ noted that the claimant's testimony regarding his pain and limitations were inconsistent with the medical evidence. The ALJ stated that the claimant did not see a doctor on a regular basis and that no treating or consulting source indicated that the claimant was not capable of performing at least some type of work at a light level of physical exertion, with only minor physical and mental restrictions. The ALJ noted that treating sources found that the claimant suffered from mild to moderate major depression but that his depression was secondary to work stress and the claimant's divorce. Without explanation, the ALJ asserted that she accounted for these limitations in the claimant's RFC. (R. 140).

The ALJ subsequently found that, based on the VE's testimony, the claimant was unable to perform any past relevant work, and no transferable skills existed within the sedentary RFC. However, based on the VE's testimony, jobs existed in significant numbers in the national economy that the claimant could perform. Therefore, the ALJ ultimately determined that the claimant was not disabled under the rules of the Social Security Act. (R. 141).

*The Appeal Council's Remand Order*

Following the first decision of the ALJ, the AC remanded the claimant's case for further proceedings on March 19, 2010. In relevant part, the remand order directed the ALJ to"[u]pdate the medical evidence concerning the claimant's physical and mental impairments," to "obtain medical evidence from a medical expert to clarify the nature and severity of the claimant's impairments," and to "give further consideration to the claimant's maximum residual functional capacity during the entire period at issue providing rationale with specific references to evidence of record in support of assessed limitations." (R. 146).

The AC, in its order, stated that the ALJ's decision indicated that the claimant had the RFC to perform light work as defined in 20 C.F.R.§ 404.1567(b) with a sit/ stand option and no more than mild to moderate pain and depression, but the AC was concerned that substantial evidence did not support this RFC assessment. The AC pointed out that the ALJ's decision indicated that the claimant suffered from the severe mental impairment of depression; however, the ALJ's RFC assessment did not indicate the claimant's ability to perform mental work-related activities and it failed to indicate whether the claimant can perform work-related mental activities, such as the ability to understand, carry out and remember instructions; to use judgment in making work-related decisions; to respond appropriately to supervision, coworkers and work situations; and to deal with changes in a routine work setting. (R. 145).

*Second ALJ Hearing (March 23, 2011)*

After the AC granted the claimant's request for review and remanded the case to the ALJ with instructions, the same ALJ held a second hearing on March 23, 2011. At the hearing, the claimant testified about his physical impairments; however, as stated previously, this court will

only discuss testimony regarding the claimant's mental limitations.

At the hearing, the claimant testified that, over the years, his depression has worsened; however, because he can no longer afford his medication, his depression has gone untreated. (R. 72). Regarding daily activities and limitations, the claimant testified that, on an average day, his pain is at a level of eight on a scale of one to ten. (R. 83). The claimant also testified that his daily activities include doing yard work, going grocery shopping, and doing the laundry and household chores with the help of his mother. (R. 83-88).

The ALJ then examined the VE, David Head, who again testified concerning the type and availability of jobs that the claimant was able to perform. (R. 88-94). The ALJ posed two hypothetical situations to the VE based on an individual of the same age, education and past relevant work experience as the claimant, with the following limitations: has back and neck pain; has post bilateral carpal tunnel release syndrome; has sinus syndrome; has mild depression; has a fractured elbow of the non dominant hand; cannot focus on things like reading blue prints, but can read and watch television; cannot climb stairs on a regular basis; cannot stand, sit or walk for long periods of time; has a normal range of motion; has no problem operating vehicles or machinery; can maintain personal hygiene; can sort, file and handle papers; can keep up with appointments; can coordinate his health care and the health care of his mother; can use public transportation; and can drive. Next, the VE identified the sedentary work opportunities that the claimant could perform, which included information clerk, telephone answering clerk, bench and table worker, or non-production quota sedentary assembler. (R. 89-91).

Then, the ALJ asked the VE to consider a second hypothetical, regarding a person with the same limitations as the previous individual but also to assume that the previous individual has

cardiomaglia with a heart condition with pain in the individual's chest limiting his ability to exert himself limiting him to less than eight hours a day of work. In response, the VE testified that such a person would not be able to perform any of the jobs previously mentioned, nor any other jobs in the national economy. (R. 93-94).

*Second ALJ Decision (Re: Mental Limitations)*

On May 23, 2011, the ALJ issued a decision finding that the claimant was not disabled under the Social Security Act. (R. 25). First, the ALJ found that the claimant had not engaged in substantial gainful activity since the alleged onset date of his disability. (R. 26). Then, the ALJ found that the claimant's degenerative lumbar and cervical disc disease and hypertension qualified as severe impairments; she concluded however, that these impairments did not singly or in combination meet a listing impairment. (R. 28).

Unlike the ALJ's first decision, the ALJ, in this decision, found that the claimant's mental impairment of depression was nonsevere because it did not cause more than a minimal limitation in the claimant's ability to perform basic mental work activities. The ALJ found that the claimants's medically determinable mental impairment of depression caused no more than a "mild" limitation in activities of daily living; maintaining social functioning; and maintaining concentration, persistence or pace. The ALJ also found no episodes of decompensation. Thus, the ALJ found that the claimant did not meet the criteria of the "paragraph B" listings requirements. (R. 27).

In making this determination, the ALJ gave great weight to the January 9, 2007 psychiatric review technique form completed by Dr. Frank J. Nuckols, a State agency psychological consultant. In his evaluation, Dr. Nuckols opined that the claimant did not have a

severe mental impairment. (R. 364-77). The ALJ also gave some weight to the claimant's and his then wife's questionnaires about activities of daily living, completed on October 25, 2006; the ALJ ruled that, at that time, the claimant was able to watch television and remember what he watched as well as read the newspaper and remember what he read. (R. 250-54, 27). However, the ALJ specifically noted that these daily living questionnaires were completed three years before the claimant's alleged onset date of disability and are the same questionnaires that she relied upon in her first decision.

Next, after considering the entire record, the ALJ concluded that the claimant had the RFC to perform sedentary work with a sit/stand option as defined in 20 C.F.R. § 404.1567(a) with the following limitations: can occasionally reach overhead; can frequently reach everywhere else; can continuously handle, finger and feel; can frequently push and pull; can frequently operate foot controls; can occasionally stoop, kneel, crouch or crawl; can occasionally be exposed to vibrations and moving mechanical parts; can continuously be exposed to humidity, wetness, dust, odors, fumes, cold and heat; cannot balance or climb stairs, ramps, ladders or scaffolds; and cannot work around unprotected heights. (R. 28).

To address the claimant's allegations of his limitations from his impairments, the ALJ discussed the claimant's daily activities questionnaire, dated October, 2006, as well as the claimant's testimony from the hearing. (R. 267-71, 86-88). Regarding daily activities, the ALJ stated that the claimant cooks, does the laundry, does yard work and takes care of his mother. The ALJ noted that these activities not only require physical exertion, they require mental exertion as well. The ALJ also considered the opinion of Dr. Allen that the claimant's impairments would cause a distraction from tasks or total abandonment of tasks if he were to

perform activities such as prolonged sitting, walking, standing, bending, stooping, and moving extremities. However, the ALJ noted that she accounted for those limitations in the claimant's RFC determination by providing a sit/stand option. (R. 33).

The ALJ also pointed out that the claimant testified that although his depression has increasingly gotten worse, he is no longer able to afford his depression medication. The ALJ dismissed this explanation as the reason he is no longer taking his depression medication by pointing out that the claimant is a regular cigarette and cigar smoker. The ALJ opined that the claimant's ability to find money for his habits, but not for his medications, suggests that his alleged pain and depression is not as bad as he described. (R. 33).

The ALJ subsequently found that the claimant was unable to perform his past relevant work, and that no transferable skills existed within the sedentary RFC. However, based on the VE's testimony, the ALJ found that jobs existed in the national economy for the claimant based on his age, education, work experience and RFC. Such jobs included work as an information clerk, telephone answering clerk, bench and table worker, or non-production quota sedentary assembler. (R. 89-91). Therefore, the ALJ ultimately determined that the claimant was not disabled under the rules of the Social Security Act. (R. 88-94).

## VI. DISCUSSION

The claimant argues that the ALJ failed to comply with the special instructions contained in the AC's order by not obtaining new medical evidence from a psychiatric medical expert. This court agrees.

Section 404.977(a) and (b) of Title 20 of Federal Regulations provides that the ALJ must take any action that is ordered by the Appeals Council and can take any additional action that is

not inconsistent with the Appeals Council's remand order. 20 C.F.R. § 404.977(a) and (b). In the instant case, on March 19, 2010, the AC instructed the ALJ to "[u]pdate the medical evidence concerning the claimant's physical and mental impairments"; to "obtain medical evidence from a medical expert to clarify the nature and severity of the claimant's impairments"; and to "give further consideration to the claimant's maximum residual functional capacity during the entire period at issue providing rationale with specific references to evidence of record in support of assessed limitations." In more general terms, the AC ordered the ALJ to more adequately evaluate the claimant's mental and physical impairments by obtaining new medical evidence and to re-assess the claimant's RFC and provide findings and supporting rationale that consider the new medical evidence. (R. 146). Because the AC explicitly ordered the ALJ to update the medical evidence concerning both the claimant's physical *and* mental impairments, this court agrees with the claimant that the AC's directive also involved the ALJ's obligation to obtain new medical evidence from a mental health expert regarding the claimant's mental limitations.

In the present case, the ALJ did obtain new medical evidence regarding the claimant's physical limitations; however, the ALJ sought no new medical evidence in evaluating the claimant's mental limitations. In the ALJ's first decision, she found the claimant's mental impairment of depression to be severe. (R. 137). In making this initial determination, that the claimant's depression was severe, the ALJ relied on Dr. Nuckol's January 2007 Psychiatric Review Technique Form and the claimant's October 2006 activities of daily living questionnaire. (R. 364-77). Based on this evidence, the ALJ assessed the claimant with the RFC to perform light work with limitations as defined in 20 C.F.R. § 404.1567(b). (R. 138).

In the ALJ's subsequent 2011 decision, after the AC's remand order, the ALJ again relied

on the Dr. Nuckols *2007* Psychiatric Review Technique Form and the claimant's *October 2006* activities of daily living questionnaires. In assessing his mental limitations this time, however, the ALJ found the claimant's depression to be nonsevere despite relying on the same evidence, and assessed that the claimant had the RFC to perform sedentary work with limitations. (R. 27). The only new evidence that the ALJ relied upon in her 2011 decision was the claimant's testimony that, even though his depression had worsened, he had not been taking his prescribed depression medication since August, 2006. (R. 72, 359). The ALJ acknowledged that the claimant stated that the reason he was not taking his depression medication was because he could no longer afford it; but, the ALJ subsequently disregarded his explanation by stating that the claimant was a habitual smoker and had no problem funding his smoking habit. (R. 33). However, the ALJ's decision to go from a finding of depression as a severe impairment to a non-severe impairment based on this fact alone lacks substantial evidence.

Here, the claimant's testimony regarding his noncompliance does not amount to the requisite substantial evidence needed to support the change between the ALJ's first and second opinion from severe to nonsevere regarding the claimant's depression. Furthermore, the claimant's testimony and medical records suggest that in 2009, at the time of the ALJ's first decision, the claimant had not been taking his prescribed medication for approximately three years, yet the ALJ still found the claimant's depression to be a severe impairment at that time. (R. 359).

In her 2011 opinion, the ALJ found the claimant's mental impairment of depression to be nonsevere, relying on the claimant's testimony that he has not taken his depression medication since August 2006. However, these facts are the same facts that were before the ALJ at the time

of her first decision. The inconsistency between the ALJ's first and second opinions are concerning to the court primarily because both opinions rely on the same evidence, yet reach opposite results regarding the severity of the claimant's depression.

The ALJ's failure to follow the AC's order and instead rely on the same evidence relied upon in the her first opinion with a different result amounts to reversible error. On remand, the ALJ should follow the AC's order and obtain new evidence from a medical expert to clarify the nature and severity of the claimant's mental impairments.

## VII. CONCLUSION

For the reasons as stated, this court concludes that the ALJ failed to comply with the AC's order to obtain evidence from a medical expert to clarify the nature and severity of the claimant's mental impairments. Therefore, the court will reverse the Commissioner's decision and will remand it for the ALJ to take steps in accordance with this opinion.

A separate Order will be entered in accordance with this Memorandum Opinion.

DONE and ORDERED this 23rd day of September, 2014.

KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE